**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| TYLER HARRINGTON, § | |
|    Plaintiff, § | |
| § | |
| v. § | Civil Action No.: 4:24-cv-00366 |
| § | |
| JAMES LANCASTER § | |
| JARED LINDSAY, and § | |
| NATHANIEL CANO, § | |
|    Defendants. § | |

**DEFENDANTS JAMES LANCASTER AND JARED LINDSAY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants James Lancaster and Jared Lindsay files this Motion to Dismiss Plaintiff's Original Complaint (Doc. #1), pursuant to the Federal Rules of Civil Procedure 12(b)(6) to dismiss Plaintiff's Original Complaint (Doc. #1), pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure. In support of said motion, Defendants Lancaster and Lindsay would respectfully show the Court as follows:

    **I.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS**

1. On September 24, 2022, around 11:51p.m., Harris County Constable Office Precinct 2 Deputy James Lancaster was dispatched to a call for service at 9819 Sagemark Drive regarding a suspicious person knocking on the front and backdoor of a home. The homeowner informed dispatch that the suspicious person would not respond when she asked who is it outside. Deputy Lancaster arrived at 9819 Sagemark Drive at 11:57 p.m. and contacted the homeowner. Deputy Lancaster searched the outside of the property but did not locate the suspicious person. At 12:48 a.m., Deputy Lancaster cleared the call and left the location at 9819 Sagemark Drive. Soon thereafter, Deputy Jared Lindsay and Deputy Nathaniel Cano were dispatched to 9818 Sagemark

1

Drive regarding a report of a suspicious person. Dispatch informed Deputies Lindsay and Cano that the homeowner stated that two people, a male and female were banging on his front door and back door and that he could see it on camera. The homeowner also stated that he was not home and that his wife had left because she was afraid. The homeowner informed dispatch that his address was 9818 Sagemark Drive. Deputy Lindsay and Deputy Cano arrived at 9818 Sagemark Drive. Deputy Lancaster arrived shortly thereafter and informed Deputy Lindsay and Deputy Cano that he had just searched the house across the street, 9819 Sagemark Drive, because of an earlier call for a suspicious person that was called in by the neighbor. The deputies checked the front and back doors of the home at 9818 Sagemark Drive to see if they were secured, but found they were unlocked and unsecured. Dispatch called the homeowner and advised him that the front and back doors of 9818 Sagemark Drive were found unlocked. The homeowner permitted the deputies to search his house because the doors should have been locked and no one was supposed to be there. The deputies then double checked with dispatch to confirm the homeowner permitted them to clear the home. Upon confirmation, Deputy Lancaster went to the backdoor in case an unknown suspect tried to flee out the back. Deputy Cano and Deputy Lindsay went to the front door to search the home. Deputy Lindsay unholstered his duty weapon and then opened the front door clearing the area for safety. Deputy Lindsay then made an announcement several times in a loud voice calling out "Constable's Office come with your hands out", but no one made a sound or moved. As Deputy Lindsay moved further into the house clearing the rooms, he observed a male and female asleep on the bed. Deputy Lindsay backed up upon seeing the two subjects inside after being told that no one should be in the house. Deputy Lindsay then informed Deputy Cato to fall back for cover. Deputy Lindsay then called out several more times from the front door to wake the individuals up. Plaintiff Tyler Harrington and his wife woke up and came to the front. After getting their

identifications, Deputy Lindsay notified dispatch that the home was occupied. Deputy Lancaster then made entry into the back door. The Deputies re-holstered their weapons once they confirmed the Plaintiff and his wife didn't have a weapon. They asked Plaintiff who lived in the house. Plaintiff Harrington and his wife stated they lived in the house. Deputy Lindsay contacted dispatch to have her double check on the address that they were dispatched to, and dispatch again stated two separate times 9818 Sagemark Drive. At that moment Deputy Lindsay asked dispatch to check with the Complainant again and to advise him that they had people in their home stating that they live there. The Complainant then retracts and states the address is 9819 Sagemark Drive. The Deputies at that time advised the Plaintiff and his wife what caused them to be at their home. The Deputies then went to 9819 Sagemark Drive and checked to make sure it was secured.

2.  On January 31, 2024, the Plaintiff, Tyler Harrington, filed his original complaint (Doc. #1) against James Lancaster, Jared Lindsay, and Nathaniel Cano in their individual capacity alleging the Defendants violated his 4th Amendment right to the United States Constitution for unlawful entry, search and seizure, and excessive force.

3.  Defendants James Lancaster and Jared Lindsay now respectfully moves this Court to dismiss Plaintiff's claims against them.

## II. STATEMENT OF ISSUES, SUMMARY OF ARGUMENT AND STANDARD OF REVIEW

**A. Statement of Issues.**

4.  The issue to be ruled upon by the Court regarding Deputy Lancaster and Lindsay are:

    (a) Whether Plaintiff Harrington has stated a claim upon which relief can be granted against Deputy Lancaster and Deputy Lindsay?

    (b) Whether Defendants Lancaster and Lindsay are entitled to qualified immunity?

**B.     Summary of Argument**

5.      The Complaint is deficient in operative facts necessary to overcome the presumption of qualified immunity and amounts to nothing more than general, conclusory allegations masquerading as factual conclusions of liability, which is insufficient to overcome a qualified immunity defense. Thus, Plaintiff has failed to state any claim upon which relief can be granted against Defendants Lancaster and Lindsay.

**C.     Standard of Review.**

6.      **Rule 12(b)(6).** If a complaint fails to state a claim upon which relief can be granted, a trial court may dismiss the complaint as a matter of law. *See* Fed. R. Civ. P. 12(b)(6); *see also Ramming*, 281 F.3d at 161 (a Rule 12(b)(6) motion is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim"). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims stated in the complaint and must be evaluated solely on the basis of the pleadings. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "An unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Ashcroft,* 556 U.S. at 678-679. Thus, "dismissal is appropriate only if the complaint fails to plead 'enough facts to state a claim of relief that is plausible on its face.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570).

7.      Surviving a motion to dismiss, therefore, requires more than hinting at "a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678. A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*.

4

(quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*.

8. "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint and construes them in light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003) (internal citation omitted). However, courts are not bound to accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statement," or legal conclusions couched as factual assertions. *See Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Ashcroft*, 556 US at 678); *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) ("plaintiff must allege facts that support the elements of the cause of action in order to make out a valid claim").

9. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 544. Thus, dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *See Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 624 (5th Cir. 2001) (quoting *Blackburn v. City of Marshall*, 42

F.3d 925, 931 (5th Cir. 1995)); *see also Hale*, 642 F.3d at 499. Conclusory allegations or legal conclusions masquerading as factual conclusions are not adequate to prevent dismissal. *Taylor*, 296 F.3d at 378 (quoting *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993)).

**D.     Qualified Immunity**

10.     Qualified immunity is an affirmative defense that shields a government official "from civil damages liability unless [he] violated a statute of constitutional right that was clearly established at the time of the challenged conduct." *Brown v. Coulston*, 463 F.Supp.3d 762 (E.D. Tex. May 29, 2020) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). When a defendant invokes qualified immunity, the plaintiff must demonstrate that the defense does not apply. *See King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) ; *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).

### III.     ARGUMENT AND AUTHORITIES

**A.     Plaintiff's claim for Excessive Force.**

11.     To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that he was seized." *Flores*, 381 F.3d at 396 (citing *Graham*, 490 U.S. at 388, 109 S.Ct. 1865 (1989)). "Next he must show that he suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Id*. (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).

12.     Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of

the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake. *Id*., at 8, 105 S.Ct., at 1699, quoting *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. See *Terry v. Ohio*, 392 U.S., at 22–27, 88 S.Ct., at 1880–1883. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See *Tennessee v. Garner*, 471 U.S., at 8–9, 105 S.Ct., at 1699–1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

13. In *Graham* the Supreme Court explained the perspective from which courts are to evaluate a claim for the excessive use of force under the Fourth Amendment:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

7

*Id*. Only the objective reasonableness of force matters for Fourth Amendment purposes; an officer's subjective motivation and intent are irrelevant. *Id*. at 1872–73 ("subjective motivations of the individual officers ... [have] no bearing on whether a particular seizure is 'unreasonable' under the Fourth amendment"). The court must measure the force used under the facts as a reasonable officer would perceive them. *Id*. at 1872.

14. Plaintiff asserts in his Original Complaint that Defendants woke him up by screaming at him and holding him at gunpoint. (Doc. # 1). Plaintiff asserts that Defendants did so despite the fact that they were responding to phone calls concerning non-violent, non-emergency activity. *Id*. However, the Defendant Deputies relied upon the 911 caller's permission to enter the home for purposes of clearing the home for safety. It was late at night and there was not supposed to be anyone inside the home. Once the Deputies identified the Plaintiff as the homeowner, they holstered their weapons. Deputies Lancaster and Lindsay are entitled to qualified immunity on this conduct, because it certainly can't be said on these facts that "every reasonable officer would have understood" that the pertinent actions were unlawful. This being so, "officers of reasonable competence" could disagree on whether the force used here was excessive. Because Deputy Lancaster and Lindsay acted as any reasonable officer would under the circumstances, they are entitled to qualified immunity.

**B.　Unlawful Entry, Search, and Seizure Claim**

15. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." As that text makes clear, "the ultimate touchstone of the Fourth Amendment

8

is 'reasonableness.' " *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). That standard "generally requires the obtaining of a judicial warrant" before a law enforcement officer can enter a home without permission. *Riley v. California*, 573 U.S. 373, 382, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (internal quotation marks omitted). But not always: The "warrant requirement is subject to certain exceptions." *Brigham City*, 547 U.S., at 403, 126 S.Ct. 1943.

16. "The ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Riley v. California*, 573 U.S. 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (some internal quotation marks omitted). To be reasonable is not to be perfect, and so the Fourth Amendment allows *61 for some mistakes on the part of government officials, giving them "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). We have recognized that searches and seizures based on mistakes of fact can be reasonable. The warrantless search of a home, for instance, is reasonable if undertaken with the consent of a resident, and remains lawful when officers obtain the consent of someone who reasonably appears to be but is not in fact a resident. See *Illinois v. Rodriguez*, 497 U.S. 177, 183–186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). By the same token, if officers with probable cause to arrest a suspect mistakenly arrest an individual matching the suspect's description, neither the seizure nor an accompanying search of the arrestee would be unlawful. See *Hill v. California*, 401 U.S. 797, 802–805, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). The limit is that "the mistakes must be those of reasonable men." *bRinegar,supra*, at 176, 69 s.CT. 1302.

17. Here, Deputies Lancaster and Lindsay relied upon the consent of the Complainant to search 9818 Sagemark Drive. The entry and search was undertaken based upon the consent of the person who reasonably appeared to be the homeowner of 9818 Sagemark Drive. Because the deputies mistake was reasonable within the fourth amendment, they are entitled to qualified immunity.

### IV.    CONCLUSION AND PRAYER

18. For the reasons stated herein, Plaintiff has failed to state any claim upon which relief can be granted against Deputy Defendants Lancaster and Lindsay. Accordingly, Lancaster and Lindsay are entitled to dismissal of Plaintiff's claims against them as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Deputy Defendants James Lancaster, and Jared Lindsay requests that the Court grant their motion and enter an order dismissing Plaintiff's claim against them and grant all other relief to which these Defendants are entitled.

Date: March 7, 2024.

Respectfully submitted,

**CHRISTIAN D. MENEFEE**
HARRIS COUNTY ATTORNEY

**JONATHAN G. C. FOMBONNE**
DEPUTY COUNTY ATTORNEY AND FIRST ASSISTANT

**NATALIE G. DELUCA**
MANAGING COUNSEL,
DEFENSIVE LITIGATION, EMPLOYMENT, &
REAL ESTATE DIVISIONS

By:    */s/ Gregory Burnett*
**GREGORY BURNETT**
Assistant County Attorney
ATTORNEY-IN-CHARGE
State Bar No. 24057785

                                       Fed. Bar No. 3785139
                                       Tel: (713) 274-5224 (direct)
                                       gregory.burnett@harriscountytx.gov

**RACHEL FRASER**
Assistant County Attorney
ATTORNEY TO BE NOTICED
State Bar No. 24079725
Fed. Bar No. 2553428
Tel: (713) 274-5383 (direct)
rachel.fraser@harriscountytx.gov

**OFFICE OF THE HARRIS COUNTY ATTORNEY**
1019 Congress Street
Houston, Texas 77002

**ATTORNEYS FOR HARRIS COUNTY**

## CERTIFICATE OF SERVICE

      I certify that, pursuant to Federal Rules of Civil Procedure, a true copy of the instrument to which this certificate is attached was filed with the clerk of the court using CM/ECF system, which will send electronic notification for those listed of record who receive electronically filed documents.

                                       */s/ Gregory Burnett*
                                       GREGORY BURNETT